Filed 5/25/22  P. v. Allen CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLARENCE RAY ALLEN,<br><br>Defendant and Appellant. | F083493<br><br>(Fresno Super. Ct. No. F18902213)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Peña, J. and De Santos, J.

**INTRODUCTION**

Appellant and defendant Clarence Ray Allen was convicted of multiple felony offenses after a jury trial, and the judgment was affirmed on direct appeal. Thereafter, he requested the superior court to strike the restitution fine. The court dismissed and vacated certain fees and assessments but did not strike the restitution fine, and appellant filed this appeal.

On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

**FACTS[1]**

On March 28, 2018, friends, T.R. and P.G., were chatting inside P.G.'s parked vehicle with the windows open just outside of a public park. T.R. testified she was sitting on the passenger's side, and P.G. was on the driver's side.

At around 4:30 p.m., a man with burgundy/reddish colored dreads, wearing a red bandana around his neck and all red clothing, approached the passenger side of the vehicle. T.R. had never seen the man before but identified him as appellant from a photo lineup shown to her by law enforcement the following day and also identified appellant during trial. Appellant leaned into the vehicle and asked if they had any change. The encounter lasted fewer than five minutes, and appellant left. T.R.'s purse was in the vehicle, which contained her ID and other personal items, and her phone was on her lap. The items were visible from where appellant was standing.

After appellant walked away from the vehicle, T.R. observed appellant walk up to another man, who she later identified as Jerry Whitehead, from a photo lineup shown to

[1] The facts and some aspects of the procedural history are from this court's nonpublished opinion in appellant's direct appeal, *People v. Allen* (Mar. 24, 2021, F078600), of which we take judicial notice. (Evid. Code, § 450, § 452, subd. (d), § 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

her by law enforcement, and who was wearing a spandex cap, a black shirt, and black shorts.

Whitehead approached the vehicle, asked P.G. if he was from the area, and said he would be back in 15 minutes. He then walked off with appellant. T.R. and P.G. began talking about what had just happened, and before this conversation ended, Whitehead approached the passenger's side of the vehicle and pointed a rifle directly at T.R.'s face. T.R. observed appellant wearing the red bandana and a red shirt on the driver's side of the vehicle pointing a silver handgun at P.G.

P.G. had his hand on the ignition as if he were going to start the vehicle, and appellant told him not to move. P.G. and T.R. were told to exit the vehicle; they complied and went to the sidewalk. T.R. left her purse and phone in the vehicle, and P.G.'s belongings were in the vehicle as well. Appellant got in the driver's seat, Whitehead got into the passenger seat, and they drove off.

On cross-examination, T.R. was presented with footage from law enforcement's body camera taken within an hour of the incident of her explaining what had happened to the investigating officer. In the footage, T.R. tells the officer a man in a red shirt and reddish-brown dyed dreads came up to the vehicle; she saw him leave to talk to another individual, a man in a black shirt with long dreads. The man in black then approached and said they would be back in 15 minutes. T.R. told the officer that the guy with the long dreads came back with another individual about 15 minutes later. T.R. said the guy with the red dreads and red clothing "didn't come back," and that the man with the handgun had dark brown or black dreads and was wearing a mask. After viewing the video, T.R. testified the man with the handgun did not have a mask on and had dreads with burgundy, reddish-brown tips. T.R. said that when she mentioned the dark brown or black dreads, she was referring to Whitehead, not the man with the handgun. She did not recall telling an officer the man in red never came back.

3.

The day following the incident, a sheriff's deputy was dispatched to respond to an area where P.G.'s vehicle was sighted. Appellant had been observed driving the vehicle and was present at the scene. The deputy performed a search of appellant and found P.G.'s driver's license in his front pocket. He then turned it over to Fresno Police Department personnel.

Fresno Police Department Officer Kham Xiong, lead investigator of the case, testified he reviewed a nearby homeowner's security footage, which showed an area near the scene of the crimes. Xiong identified two subjects at 4:34 p.m. – one wearing blue jean shorts and a black sweater with white stripes with long dreads and another wearing black pants and a red shirt with short collar-length dreads – walking away from where the vehicle was parked but looking back in that direction. The man with the shorter dreads had "short dreads just like [appellant]" and the dreads had a "slight hue of a different color" with "a reddish or maybe like an orange tint." At 4:47 p.m., the subjects appear on the footage again walking toward the vehicle; they were both wearing dark clothing. The subject Xiong believed was appellant was wearing a red bandana around his neck. It appeared to Xiong that appellant moved the red bandana to cover the lower part of his face. Xiong did not see an individual dressed in all red in any of the footage he reviewed.

When T.R. was shown the security camera footage during her testimony, and it was pointed out to her that the individual she identified as appellant was wearing black when he came back, rather than red as she testified, she stated she was not paying attention to what he was wearing when he came back. She was focused on his red bandana and red dreads and recognized his voice and face.

Officer Xiong testified when the vehicle was recovered, it was searched and a red bandana was found in the sunglass storage area of the vehicle.

Officer Xiong interviewed appellant at police headquarters on March 29, 2018. The interview was recorded and played for the jury. In the interview, appellant denied involvement in the crime and said he was not present at the park when the crimes took

4.

place. Appellant stated on the morning of March 28, he asked his friend, Steve William, to borrow his vehicle. Appellant had asked William if the vehicle was stolen, and William responded it was not.

## PROCEDURAL BACKGROUND

On August 14, 2018, after a jury trial, appellant was convicted of count 1, carjacking (Pen. Code, § 215, subd. (a));[2] count 2, second degree robbery (§ 211); and count 5, assault with a firearm (§ 245, subd. (a)(2)); with firearm enhancements found true as to counts 1 and 2 (§ 12022.53, subd. (b)) and count 5 (§ 12022.5, subd. (a)). Appellant admitted a prior prison term enhancement (§ 667.5, subd. (b)).

On October 25, 2018, the court held the sentencing hearing and imposed an aggregate term of 15 years based on the midterm of five years for count 1, carjacking; plus 10 years for the section 12022.53, subdivision (b) enhancement for personal use of a firearm. The court stated it was aware that it had discretion to dismiss the firearm enhancement, made findings to explain why it would not do so, and ordered the prior prison term enhancement stricken. The court stayed the midterms imposed for counts 2 and 5 and the attached firearm enhancements.

The court imposed a $6,000 restitution fine (§ 1202.4, subd. (b)) and suspended the parole revocation fine in the same amount (§ 1202.45). It also imposed a $296 probation report fee (§ 1203.1b); court operations assessments of $120 (§ 1465.8) and criminal conviction assessments of $90 (Gov. Code, § 70373). The court stated that, in light of these fines and fees, it would not order appellant to reimburse the costs of his defense. The court reserved victim restitution and stated both appellant and codefendant Whitehead would be joint and severally liable (§ 1202.4, subd. (f)).

On December 20, 2018, appellant filed a timely notice of appeal.

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

**Direct Appeal**

On March 24, 2021, this court affirmed the judgment on direct appeal and rejected appellant's argument that the court provided the jury with an invalid "alternate theory of guilt" as to the carjacking and robbery counts by instructing them with CALCRIM No. 376. We also rejected his claim that the court erred by failing to sua sponte instruct the jury on the lesser related offense of receiving stolen property. (*People v. Allen*, *supra*, F078600, at pp. 2, 11.)

**Postjudgment Motion**

On July 18, 2021, appellant, in pro. per., sent an ex parte motion to the superior court, and asked it to dismiss or reduce the $6,000 restitution fine based on the enactment of Assembly Bill No. 1869 (2019–2020 Reg. Sess.) because he was indigent.

On October 1, 2021, the court summarily denied the motion.

**Appellant Motions**

On October 21, 2021, appellant filed a timely notice of appeal.

On April 4, 2022, the superior court received a letter from appellate counsel pursuant to section 1237.2, asking the court to reconsider appellant's motion to reduce or strike certain fees under Assembly Bill No. 1869:

> "Although [appellant's] request did not specifically refer to the $296 probation report fee under … section 1203.1b, that fee was abrogated by Assembly Bill No. 1869. Assembly Bill No. 1869 created … section 1465.9, which provides that as of July 1, 2021, any fee imposed under … section 1203.1b 'shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated.' [Citation.] [¶] [Appellant's] judgment includes a probation report fee that was abrogated by Assembly Bill No. 1869. Therefore, he respectfully requests an order from this court vacating the $296 probation report fee under … section 1203.1b."

On April 5, 2022, the superior court issued an order that dismissed and vacated the previously imposed probation report fee of $296 (§ 1203.1b). The court also ordered dismissed and vacated the court security fees of $120 (§ 1465.8), and the criminal

conviction assessments of $90 (Gov. Code, § 70373), and ordered the abstract of judgment amended accordingly.

On April 6, 2022, an amended abstract of judgment was filed that showed the court imposed the restitution fine of $6,000 (§ 1202.4, subd. (b)) and suspended the parole revocation fine in the same amount (§ 1202.45), with victim restitution in an amount to be determined, and that no other fines or fees were imposed.

## DISCUSSION

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on April 19, 2022, we invited appellant to submit additional briefing.

On May 5, 2022, appellant filed a supplemental brief and argued the superior court should have also stricken the restitution fine because he was indigent and unable to pay for legal counsel.

**Analysis**

As applicable to this case, Assembly Bill 1869 added section 1465.9, which states in relevant part: "On and after July 1, 2021, the balance of any court-imposed costs pursuant to Section … 1203.1b, as [that section] read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing th[at] cost[] shall be vacated." (§ 1465.9, subd. (a); *People v. Clark* (2021) 67 Cal.App.5th 248, 259; *People v. Greeley* (2021) 70 Cal.App.5th 609, 625.) "[T]he plain language" of section 1465.9 means that any balance remaining on appellant's account for the $296 fee, "that is, any amounts imposed but not paid," is " 'unenforceable and uncollectable.' " (*People v. Clark,* at p. 259; *People v. Greeley,* at p. 626.) The superior court was thus mandated to vacate the $296 probation report fee previously imposed under section 1203.1b.

7.

Appellant's supplemental brief asserts the court also should have stricken or reduced the $6,000 restitution fine because of his indigency. We first note that Assembly Bill No. 1869 did not address restitution fines imposed pursuant to section 1202.4, subdivision (b). We further note that at the time of the sentencing hearing, appellant had the statutory ability to raise an ability-to-pay objection to the court's imposition of the $6,000 restitution fine since it exceeded the statutory minimum amount, but appellant failed to do so and forfeited appellate review. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153.)

In addition, while Assembly Bill No. 177 (2021–2022 Reg. Sess.) amended section 1465.9 by adding section 1202.4 to the provisions to which debt cancellation applies, it both repealed and reenacted section 1202.4, effective January 1, 2022, with only a single change – the elimination of former subdivision (l), which authorized an administrative fee to cover the costs of collecting a restitution fine. (§ 1465.9, subd. (b), as amended by Stats. 2021, ch. 257, § 35.) It did not otherwise eliminate or vacate fines already imposed under section 1202.4, subdivision (b).

Appellant argues the court should have vacated the restitution fine since he was represented by appointed counsel. At the sentencing hearing, the court stated it would not order appellant to reimburse the costs of representation. The court's decision was based on section 987.8, that carries a specific statutory presumption that a defendant sentenced to more than one year in prison or county jail does not have the ability to reimburse defense costs. Such a statutory presumption does not apply to whether he had the ability to pay a restitution fine. (*People v. Rodriguez* (2019) 34 Cal.App.5th 641, 646.)

Finally, appellate counsel's section 1237.2 letter to the superior court asked the court to reconsider appellant's original letter asking for relief, but only argued the $296 probation report fee imposed under section 1203.1b was no longer valid under Assembly Bill No. 1869. Appellate counsel did not ask the court to reconsider the court operations

assessments of $120 imposed under section 1465.8, and/or the criminal conviction assessments of $90 imposed under Government Code section 70373.  Nevertheless, the court ordered stricken and vacated not only the probation report fee, but also the two assessments of $120 and $90 it had previously imposed at the sentencing hearing.

Assembly Bill No. 1869 did not address either the court operations assessment under section 1465.8, or the criminal conviction assessment under Government Code section 70373, and these two assessments have not been eliminated under any other statutory provisions.

Given the absence of any other applicable statutory amendments, the court's decision to vacate the assessments imposed under section 1465.8 and Government Code section 70373 raises the strong inference that it did so based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees.  (*Id.* at pp. 1164, 1167.)[3]  The record further implies the court considered appellant's original letter requesting relief and decided not to similarly rely on *Dueñas* to strike the restitution fine, and we decline to find it abused its discretion in making that determination.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.

---

[3] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof.  (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)